Case 4:17-mj-00890-BJ Document 1 Filed 11/30/17 Page 1 of 7 PageID 1



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 30 2017

CLERK, U.S. DISTRICT COURT
By_____
         Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:17-MJ-890 |
| JOSHUA DAVID LANE (01) | |

## CRIMINAL COMPLAINT

Possession with Intent to Distribute a Controlled Substance
(Violation of 21 U.S.C. § 841 (a)(1)&(b)(1)(C))

On or about November 25, 2017, in the Fort Worth Division of the Northern District of Texas, defendant **Joshua David Lane**, did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

I, Alex Coleman, a Special Agent with the Texas Department of Public Safety (DPS), being duly sworn, deposes and states:

1. I am a full-time certified peace officer with the Texas Department of Public Safety, and have been so employed for approximately 22 years. I have been assigned to the Criminal Investigations Division (CID) since January 2008. Prior to being assigned to CID, I was a Texas Highway Patrol Trooper. I hold a master peace officer's license from the Texas Commission on Law Enforcement (TCOLE). I have participated in both open and covert surveillance including conventional as well as electronic surveillance. I have received extensive training with electronic surveillance. I have significant experience locating and arresting federal, state and local fugitives.

**Criminal Complaint – Page 1**

I have experience investigating violations of the Texas Health and Safety Code, including but not limited to, the procurement and execution of search warrants, interviewing and working with confidential informants, and the detection and identification of various narcotics and other dangerous drugs. I have assisted and lead investigations involving violations of the Controlled Substances Act Title 21 U.S.C. These investigations have led to successful federal indictments and convictions.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7); that is, I am an officer of the United States who is authorized by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. Because this affidavit is offered for the limited purposes of supporting a criminal complaint charging **JOSHUA DAVID LANE** with a violation of 21 U.S.C. §841(a)(1)&(b)(1)(C), it does not include all facts known to me regarding this investigation.

## PROBABLE CAUSE

4. On November 27, 2017, I and other officers of DPS CID, with assistance from Dallas County Sheriff's Office Deputy Raul Reyna and United States Drug Enforcement Administration SA Justin Hitz, initiated surveillance at the La Quinta Inn & Suites located at 431 Airport Freeway, Euless, Tarrant County, Texas 76040 ("suspected place"), which is in the Northern District of Texas.

5. I was attempting to locate JOSHUA DAVID LANE. Lane was subject to arrest for three arrest warrants issued by Arlington Police Department for felony offenses of (1) Burglary of a Building, (2) Burglary of a Building, and (3) Unauthorized Use of a Motor Vehicle.

6. I initiated surveillance at the suspected place. A short time later, I and DPS CID SA Michael Webb left our vehicles in order to speak with hotel staff regarding LANE and known associates.

7. I and SA Webb learned that an individual matching LANE'S description had checked in on Saturday, November 25, 2017, into Room #201. I and SA Webb believed that the hotel staff could reasonably identify LANE based upon photographs because LANE has pronounced, distinct tattoos on his arms, hands, and neck.

8. Shortly after speaking with the front desk staff, I asked if a housekeeper could knock on the door of Room #201 to attempt to observe LANE'S presence. A housekeeper and manager walked up to the room and heard a female and two males talking.

9. DPS CID SA Keith Green obtained a master key card from hotel management. CID Agents approached the door and knocked. Agents were wearing protective body armor marked "Police."

10. A female, later identified as Ashley Merritt, opened the door. Agents entered, secured the room, and detained the occupants. LANE was not present.

11. Merritt told me and SA Webb that LANE had left earlier in the morning for Winstar Casino in Oklahoma with another female. Merritt told agents that she expected LANE to be returning soon to the hotel in a new white sport utility vehicle.

12. Based upon this information, agents established a covert surveillance perimeter at the hotel.

13. Merritt granted written consent for the search of the hotel room that resulted in the seizure of approximately 111 grams, including packaging, of a crystalline substance believed to be, and which field-tested positive for methamphetamine and one 7.62mm caliber rifle.

14. Merritt said that the suspected methamphetamine belonged to her, and that she took the methamphetamine from LANE'S belongings for retaliation.

15. One of the other occupants in the room, Marcus Buckley, identified a tan Ford F-250 pickup parked in the hotel parking lot that Buckley believed might have been stolen, as Buckley had been asked to obtain a salvage title for the vehicle by his friend and associate of LANE known to Buckley as "Outlaw." Agents confirmed it was, in fact, stolen.

16. DPS CID SA Ronnie Rapert located the vehicle in the parking lot as described by Buckley. This vehicle was later searched by DPS CID SA William Wallace. SA Wallace located two ballistic vests (body armor) and approximately 7.2 grams, including packaging, of a crystalline substance believed to be, and later field-tested positive for methamphetamine.

17. At approximately 3:10 p.m., while agents were maintaining surveillance at the exterior of the hotel, they observed a new white GMC Yukon Denali sport utility vehicle drive through the parking lot of the hotel with a white male bearing a strong resemblance to LANE driving.

18. SA Green looked down on the vehicle from the upper floors of the hotel and observed that it appeared to be LANE driving with a white female in the front passenger seat.

19. LANE parked the vehicle at the front of the hotel. Agents maintaining the perimeter closed in for the purpose of arresting LANE. Once he had observed their presence, LANE backed the GMC Yukon into an unmarked police vehicle. LANE pulled forward and began to back into the police vehicle again.

20. A CID Agent observed LANE reaching towards the center console of the vehicle, leading the Agent to fear for his life and the lives of others that would result from LANE'S unlawful use of deadly force. The CID Agent fired his weapon striking LANE. LANE was transported to a local hospital for treatment.

21. SA Green and DPS CID SA Samuel T. Dendy transported LANE to the Tarrant County Jail for booking after LANE was treated. While at the jail, the following conversation occurred:

SA Green: "That's all I need. See you later."

LANE: "Until next time."

SA Green: "Hopefully there won't be a next time. Stop getting into trouble."

SA Dendy: "Yeah, you might not survive the next time."

LANE: "You might not either."

22. SA Green believed that LANE was of the mindset that LANE did not intend to be arrested if he were released from custody, and that any attempt to re-apprehend LANE would result in LANE using any means necessary including deadly force to resist arrest.

23. On Tuesday, November 28, 2017, SA Webb obtained a state search warrant authorizing the search of the GMC Yukon driven by LANE. This vehicle was confirmed to be stolen from a victim in Arlington, Texas.

24. Affiant, SA Green, SA Cody Henderson, and DPS CID Lieutenant David Dickie conducted the search and located numerous evidentiary items including but not limited to a Beretta Px4 Storm pistol in the front center console, a Sig Sauer P938 pistol in the radio compartment along with approximately 68.6 grams of a crystalline substance believed to be, and later field tested as positive for methamphetamine, and a Ruger SR-556 rifle in the floorboard of the rear seats.

25. Agents also located numerous small empty clear plastic bags commonly used by suppliers of methamphetamine to re-package large quantities of Methamphetamine into smaller, non-bulk quantities for distribution. Agents also located a Ford key and key fob on LANE'S key ring inside the vehicle.

26. On Wednesday, November 29, 2017, SA Green, SA Henderson, and SA Rapert took the Ford key/key fob found on LANE'S key ring inside the GMC Yukon to the towing facility where the tan Ford F-250 was stored (which had contained 7.2 grams of methamphetamine and two ballistic vests). SA Rapert was able to use the key/key fob to activate the vehicle alarm, lock and unlock the doors, and turn the vehicle on by turning the key in the ignition.

## CONCLUSION

27. Based on the foregoing facts, probable cause exists to believe that **JOSHUA DAVID LANE** did knowingly possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841 (a)(1)&(b)(1)(C).

Alex Coleman, Special Agent
Texas Department of Public Safety

Sworn to before me, and subscribed in my presence on November 30th, 2017 at 1:58 pm in Fort Worth, Texas.

JEFFREY L. CURETON
United States Magistrate Judge